IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 13-00291-03,06-CR-W-BCW |
| ) | |
| T. CAMERON JONES, and ) | |
| HARRY NAJIM, ) | |
| ) | |
| Defendants. ) | |

REPORT AND RECOMMENDATION

This matter is currently before the Court on defendant Harry Najim's Motion to Suppress Wiretap Evidence (doc #201) and defendant T. Cameron Jones' Motion to Suppress Wiretap Evidence (doc #239). Defendants Najim and Jones each seek an order suppressing any evidence or intercepted communication derived from the wiretaps authorized on November 8, 2011, January 4, 2012, or January 25, 2012. Defendants argue that the government did not provide a sufficient basis for the necessity of the requested wiretap or its subsequent extensions as required by 18 U.S.C. § 2518(1)(c) and (3)(c). (Doc #201 at 3; Doc #239 at 3)

I. INTRODUCTION

On November 8, 2011, an Affidavit in Support of Application for Order Authorizing Interception of Wire Communications was presented to the Honorable Fernando J. Gaitan, Jr. (Docs #222-1; #242-1) Affidavits in support of extensions of the original wiretap were presented to Judge Gaitan on January 4 and January 25, 2012. (Docs #222-2; #222-3; #242-2; #242-3)

The November 8, 2011 affidavit was submitted in support of an application for an order authorizing the interception of wire and/or electronic communications of Craig Sheffler, Nicole Sheffler, Robert Bell, Eiad Musallet, Harry Najim, David Bishop, Mark Bishop, Thomas Cameron Jones, Gholamreza Tadaiyon and Piotr Hoffmann (the "Target Subjects") and others yet unknown concerning offenses occurring over AT&T cellular telephone number (316) 371-3706 ("Target Telephone 1") which was subscribed to by James Aboud (the lead target in the case who died on October 27, 2011). (Doc #221-1 at 2; Doc #242-1 at 2) James Aboud operated Cheap Tobacco Wholesale LLC ("CTW") located at 23208 East 24 Highway, Independence, Missouri. (Doc #221-1 at 2 n.1; Doc #242-1 at 2 n.1) According to the affidavit, Aboud's organization obtains contraband cigarettes and unlawfully distributes them, thus depriving various states of tax revenue. (Doc #221-1 at 12; Doc #242-1 at 12) The affidavit states that the primary user of Target Telephone 1 has been identified as Craig Sheffler, who now operates CTW. (Doc #222-1 at 3; Doc #242-1 at 3) Craig Sheffler is believed to oversee day to day activities within the organization and directly coordinated operations when Aboud became ill. (Doc #222-1 at 12; Doc #242-1 at 12)

The November 8, 2011 affidavit is 60 pages long and contains detailed information as to the target subjects; the cooperating individuals' background information; the background of the investigation; a financial analysis; and a pen register and toll record analysis. With respect to the necessity of the requested wiretap, the affidavit provides:

Financial Conclusions

    41.    The information garnered thus far reflects an extensive contraband cigarette trafficking conspiracy which generates large sums of money. The conspirators have intentionally circumvented traditional bank accounts and established anti-money laundering regulations in order to disguise the nature,

2

source, and location of the criminal activity and related financial proceeds. In the experiences of the investigative team, contraband cigarette traffickers and other criminals commonly place their assets in the names of third parties and shell companies in order to thwart discovery by law enforcement agents. Aboud has stated that he uses proceeds to fund accounts for his daughter. Additionally, NAJIM has laundered funds to purchase an airplane in the name of a shell company for UC Williamson.

42. I believe, based on experience and knowledge of this investigation, that evidence garnered from Title III authorized intercepts is necessary in order for financial investigators to identify assets, cash hoards, and storage facilities utilized to secret contraband cigarettes and perhaps other businesses maintained/used by the organization in order to further the money laundering investigation. Once those items have been identified, investigative measure such as the issuance of subpoenas and interviews can be used to obtain the necessary evidence. However, Title III authorization is necessary in both identifying the assets and establishing the criminal source of the assets.

* * *

## NECESSITY OF INTERCEPTION

45. Your affiant is aware that a number of normal and routine investigative techniques are available for the investigation of matters involving the trafficking of contraband cigarettes. These techniques are used in conjunction with one another and include: (1) court-authorized Title III monitoring; (b) physical surveillance; (c) mobile tracking devices; (d) examination of discarded trash; (e) the use of grand jury subpoenas; (f) the use of information from confidential informants and cooperating sources; (g) the introduction of undercover officers into the organization; (h) the use of search warrants, consensual searches and narcotic related arrests; (i) interviews of subjects or associates; (j) analysis of pen register data, cellular air-time use and telephone toll records; and (k) financial investigations.

46. These techniques have, to date, failed to identify all significant members of the organization, all the methods to launder money and all co-conspirators transporting the contraband cigarettes. Therefore, it is your Affiant's belief that the interception of wire and electronic communications over Target Telephone 1 is one of the best techniques with a reasonable likelihood of securing the evidence necessary to prove beyond a reasonable doubt that the named interceptees, and others known and unknown, are engaged in the above Subject Offenses. Although evidence has been obtained against some persons involved in the criminal activities detailed herein, agents are attempting to gain additional evidence to successfully identify, arrest, and prosecute the principals as well as

3

their associates.

> 47. Traditional investigative techniques have been tried in this case and have either: (a) failed completely; (b) had limited success but failed to achieve the full objectives of this investigation; (c) reasonably appeared to be unlikely to succeed if tried; or (d) been too dangerous to employ. If order to fully disrupt and dismantle the organization, court-authorized interception of telephone communications is necessary.
>
> 48. The investigation has shown that members of this contraband cigarette trafficking organization utilize telephones to conduct criminal activity. Also, because of the mobility of cellular telephones, members of the contraband cigarette trafficking organization can use their respective cellular telephones to conduct contraband cigarette business while out of and while moving within the Kansas City metropolitan area. Although contraband cigarette traffickers utilize various methods to circumvent detection efforts of law enforcement, contraband cigarette traffickers often will, out of necessity, utilize telephones convenient to them to communicate with other conspirators in order to facilitate their contraband cigarette trafficking.
>
> 49. In an attempt to conceal the true intent of these contraband cigarette transactions, contraband cigarette traffickers frequently fail to report or falsely report the receipt of unstamped cigarettes to the state of the licensee in furtherance of a scheme to deprive that state of tax revenue. …
>
> 50. Additionally, cigarette traffickers produce false invoices in order to deter law enforcement during the transportation of contraband cigarettes to their destinations. …
>
> 51. Based [sic] training and experience, as well as the experience of other law enforcement officers, and based upon all the facts set forth herein, I believe that the interception of wire and electronic communications is the only available technique that has a reasonable likelihood of securing the updated evidence necessary to prove that Aboud, C. SHEFFLER, and other Target Subjects, as well as others yet unknown, are engaged in the above-described offenses, and reveal the scope of the offenses and the unknown participants in them.
>
> 52. Without the requested interception of wire and electronic communications over Target Telephone 1, it would also be improbable that agents would be able to identify all the methods used to traffic cigarettes, commit other crimes, or plan contraband cigarette transactions.

(Doc #221-1 at 42-43 and 45-48; Doc #242-1 at 43-43 and 45-48) The affidavit next provides

details as to other investigative techniques that have been used during the last fourteen months (including undercover agents, financial investigation, physical surveillance, mobile tracking devices, use of grand jury subpoenas to telephone companies and financial institutions and pen register and toll records) and the shortcomings of each of these techniques and those techniques which have not been used (including use of grand jury subpoenas to persons believed to be involved in the conspiracy, search warrants, interviews of subjects or associates and trash pulls) for fear of exposing the investigation. (Doc #221-1 at 48-56; Doc #242-1 at 48-56)

The January 4, 2012 affidavit (doc #221-2; doc #242-2) was submitted in support of an application for an order authorizing the renewed interception of wire communications on Target Telephone 1 and for a new interception of wire communications on Target Telephone 2 (the primary user of which is Craig Sheffler). The affidavit is 47 pages long and contains detailed information similar to that of the previous affidavit.

The January 25, 2012 affidavit (doc #221-3; doc #242-3) was submitted in support of an application for an order authorizing a new interception of wire communications on Target Telephone 3 (a new cellular telephone being utilized by Craig Sheffler). The affidavit is 34 pages long and contains detailed information similar to that of the previous two affidavits.

On August 13, 2013, defendant T. Cameron Jones and Harry Najim, along with sixteen others, were charged by indictment. On September 10, 2013, the government was granted leave to amend the indictment. Defendant Jones is charged in forty-one counts of this forty-four count indictment—Count 1 (conspiracy to commit wire fraud and contraband cigarette trafficking); Counts 2 through 15 (trafficking in contraband cigarettes); and Counts 16 through 36 and 39 through 43 (wire fraud). Defendant Najim is charged in two counts—Count 1

5

(conspiracy to commit wire fraud and contraband cigarette trafficking) and Count 44 (conspiracy to commit money laundering).

## II. DISCUSSION

The federal wiretap statute provides the following guidance with respect to the "necessity" requirement:

> **§ 2518. Procedure for interception of wire, oral, or electronic communications**
>
> (1) Each application for an order authorizing or approving the interception of a wire, oral, or electronic communication under this chapter shall be made in writing upon oath or affirmation to a judge of competent jurisdiction and shall state the applicant's authority to make such application. Each application shall include the following information:
>
> * * *
>
> (c) a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous;
>
> * * *
>
> (3) Upon such application the judge may enter an ex parte order, as requested or as modified, authorizing or approving interception of wire, oral, or electronic communications within the territorial jurisdiction of the court in which the judge is sitting (and outside that jurisdiction but within the United States in the case of a mobile interception device authorized by a Federal court within such jurisdiction), if the judge determines on the basis of the facts submitted by the applicant that--
>
> * * *
>
> (c) normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous;

18 U.S.C. § 2518(1)(c) and (3)(c).

The "necessity" requirement has been recently examined in United States v. Milliner, 765

F.3d 836 (8th Cir. 2014). The court found:

> … Each wiretap application must include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c). Before granting a wiretap application, the court must find that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(3)(c). Whether the government made this showing of "necessity" is a factual finding, reviewed for clear error. United States v. West, 589 F.3d 936, 939 (8th Cir. 2009).
>
> "The necessity requirement of § 2518 insures 'that wiretaps are not routinely employed as the initial step in an investigation.'" United States v. Jackson, 345 F.3d 638, 644 (8th Cir. 2003), quoting United States v. Thompson, 210 F.3d 855, 859 (8th Cir. 2000). However, "[i]f law enforcement officers are able to establish that conventional investigatory techniques have not been successful in exposing the full extent of the conspiracy and the identity of each coconspirator, the necessity requirement is satisfied." West, 589 F.3d at 939, quoting Jackson, 345 F.3d at 644.

Milliner, 765 F.3d at 839.

The investigation in the instant case had been proceeding for fourteen months prior to the November 8, 2011 application for a Title III wiretap. The affidavits in question establish that conventional investigatory techniques had not been successful in exposing the full extent of the conspiracy and the identity of each co-conspirator. The affidavits clearly show the necessity of the requested wiretaps. There is no basis for suppression.

### III. CONCLUSION

For the foregoing reasons, it is

RECOMMENDED that the Court, after making an independent review of the record and applicable law, enter an order denying defendant Harry Najim's Motion to Suppress Wiretap Evidence (doc #201). It is further

RECOMMENDED that the Court, after making an independent review of the record and

7

Case 4:13-cr-00291-BCW   Document 256   Filed 01/13/15   Page 7 of 8

applicable law, enter an order denying defendant T. Cameron Jones' Motion to Suppress Wiretap Evidence (doc #239).

      Counsel are reminded they have fourteen days from the date of receipt of a copy of this Report and Recommendation within which to file and serve objections to same. A failure to file and serve timely objections shall bar an attack on appeal of the factual findings in this Report and Recommendation which are accepted or adopted by the district judge, except on the grounds of plain error or manifest injustice.

                                                  */s/ Sarah W. Hays*
                                                  SARAH W. HAYS
                                       UNITED STATES MAGISTRATE JUDGE

8

Case 4:13-cr-00291-BCW   Document 256   Filed 01/13/15   Page 8 of 8