IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 13-00291-06,09,15-CR-W-BCW |
| | ) | |
| HARRY NAJIM, | ) | |
| PHILIP CHRIST, and | ) | |
| MOHSEN ROSTAMI, | ) | |
| | ) | |
| Defendants. | ) | |

ORDER

This matter is currently before the Court on the following:

1. Defendant Najim's Motion to Sever (doc #199);

2. Defendant Christ's Motion for Severance;[1] and

3. Defendant Mohsen Rostami's Motion for Severance of Defendants (doc #208).[2]

For the reasons set forth below, these motions are denied.

I. INTRODUCTION

On August 13, 2013, defendants Harry Najim, Philip Christ and Mohsen Rostami, along with fifteen others,[3] were charged by indictment. On September 10, 2013, the government was

---

[1]The instant motion is actually contained within a larger pleading entitled Philip Christ's Motion to Dismiss the Indictment Due to Its Extreme Constitutional Deficiencies, or in the Alternative for the Extraordinary Relief of a Bill of Particulars, Motion for Severance, and Motion to Adopt and Join in Pretrial Motions Filed By Co-Defendants (doc #204).
[2]Also pending is the Government's Motion to Strike Defendant Rostami's Motion for Severance (doc #209). The government argues that defendant Rostami's motion should be stricken as it was filed after the deadline for filing pretrial motions. Despite the untimeliness of the motion, the Court will consider defendant Rostami's arguments for severance.
[3]With respect to these fifteen others: David Bishop, Mark Bishop and Piotr Hoffman have

granted leave to amend the indictment. Defendant Najim is charged in two counts of this forty-four count indictment—Count 1 (conspiracy to commit wire fraud and contraband cigarette trafficking) and Count 44 (conspiracy to commit money laundering). Defendant Christ is charged in one count—Count 1 (conspiracy to commit wire fraud and contraband cigarette trafficking). Defendant Rostami is charged in four counts—Count 1 (conspiracy to commit wire fraud and contraband cigarette trafficking) and Counts 13, 14 and 15 (trafficking in contraband cigarettes). The remaining counts of the indictment charge various other defendants with trafficking in contraband cigarettes and wire fraud. The indictment provides in part:

### COUNT ONE

From on or about July 2010, and continuing until on or about January 26, 2012, said dates being approximate, in the Western District of Missouri and elsewhere, the defendants, CRAIG SHEFFLER, DAVID BISHOP, T. CAMERON JONES, GHOLAMREZA "REZA" TADAIYON, GERALD E. BARBER, HARRY NAJIM, WILLIAM F. PARRY, TARA SUNDOWN, PHILIP CHRIST, MOUSA JUMA, TEDDY FRENCHMAN, MARK BISHOP, PIOTR HOFFMANN, PAYAM KHEIMEHDOOZ, MOHSEN ROSTAMI, NICOLE SHEFFLER, SALVATORE TORNABENE and AJ'S WHOLESALE, LLC,[4] did knowingly and intentionally combine, conspire, confederate and agree with others both known and unknown, to commit offenses against the United States, that is, wire fraud, in violation of Title 18, United States Code, Section 1343; contraband cigarette trafficking, in violation of Title 18, United States Code, Sections 2341 through 2346.

### Background and General Allegations

1. During all times relevant to this conspiracy, unindicted co-conspirator 1 (hereinafter "UCC 1") and CRAIG SHEFFLER owned and operated Cheap Tobacco Wholesale (CTW), a cigarette wholesale business located in Independence, Missouri. UCC 1 operated the business with the assistance of CRAIG and NICOLE SHEFFLER until UCC 1's death on October 27, 2011, at which time CRAIG SHEFFLER took over operations.

---

warrants outstanding; Craig Sheffler and AJ's Wholesale, LLC, have entered guilty pleas; and Gerald Barber, Teddy Frenchman and Nicole Sheffler have change of plea hearings scheduled.
[4]On August 1, 2014, the court granted the government's motion to amend the indictment to reflect defendant AJ's Candy & Tobacco, LLC's name change.

\* \* \*

11. During all times relevant to this conspiracy, HARRY NAJIM was a partner in the Adams Jones Law Firm, P.A., located in Wichita, Kansas. HARRY NAJIM was the attorney for CTW, UCC 1, and CRAIG SHEFFLER.

\* \* \*

**Manner and Means**

23. It was part of the conspiracy that UCC 1, CRAIG SHEFFLER, and TADAIYON would make regular purchases in Kansas City, Missouri, of contraband cigarettes from undercover agents (UCAs) of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) in exchange for U.S. currency.

\* \* \*

27. WILLIAM F. PARRY, TARA SUNDOWN, AJ's and Keith Stoldt would place the order for unstamped cigarettes through PHILIP CHRIST and GERALD E. BARBER. BARBER, using SCTC, would then place orders for those unstamped cigarettes from TADAIYON and BNC. TADAIYON would forward the order to DAVID BISHOP, and DAVID BISHOP would e-mail the order for the unstamped cigarettes to SHEFFLER and CTW in Independence, Missouri.

\* \* \*

29. After September 22, 2011, TADAIYON, MARK BISHOP, PIOTR HOFFMANN, PAYAM KHEIMEHDOOZ and MOHSEN ROSTAMI would pick-up the orders of unstamped cigarettes from the undercover ATF warehouse in Kansas City, Missouri, or at the CTW warehouse in Independence, Missouri, and then transport them directly to the HCID in Nebraska. TEDDY FRENCHMAN, at HCID, would coordinate with HCIL to have the unstamped cigarettes transported to Jan's Smoke Shop, AJ's and the Totem Pole Smoke Shop in New York State.

30. At no point during the conspiracy timeframe was the New York State excise tax paid on these cigarette transactions. From the post-*Oneida* date, June, 2011, through the end of the conspiracy, the total state excise tax lost to New York State was approximately $8,148,420.

**Overt Acts**

31. In furtherance of the conspiracy and to effect the objects of the

3

conspiracy, the following overt acts, among others, were committed in the Western District of Missouri and elsewhere:

\* \* \*

(c) On March 16, 2011, UCC 1 and HARRY NAJIM met with an ATF undercover agent in Wichita, Kansas, to discuss cigarette deals with TADAIYON;

\* \* \*

(k) On August 4, 2011, CRAIG SHEFFLER paid the ATF undercover agent $541,725 in cash for 132 cases (7,920 cartons) of Marlboro cigarettes, and other cigarettes. The following acts were taken by the co-conspirators in this transaction:

\* \* \*

(7) The contraband cigarettes were transported from Oklahoma to Totem Pole Smoke Shop in New York State by Wolf's Run Transport, the company owned by WILLIAM F. PARRY. PARRY was paid $7,950 by BNC for transportation fees.

(8) CHRIST was paid a commission for brokering this sale to Totem Pole.

\* \* \*

(q) On November 3, 2011, HARRY NAJIM met with the ATF undercover agent in Kansas City, Missouri, to discuss the purchase of semi-trucks with the proceeds of the cigarette transactions.

\* \* \*

(s) On November 22, 2011, CRAIG SHEFFLER purchased 352 cases of contraband cigarettes from the ATF undercover operation in Kansas City, Missouri. CRAIG SHEFFLER did not make the payment to the ATF agents during this transaction. CRAIG SHEFFLER outlined a breakdown of payments for the purchases of semi-trucks to be coordinated by attorney HARRY NAJIM. CRAIG SHEFFLER agreed to give NAJIM approximately $625,000 to purchase the Peterbilt semi-trucks for the undercover agent. CRAIG SHEFFLER stated he would pay NAJIM's law firm $9,000 and $60,000 in cash to NAJIM. …

4

\* \* \*

(t) On November 29, 2011, CRAIG SHEFFLER purchased 15,480 cartons of untaxed Marlboro cigarettes and 5,760 cartons of untaxed Newport cigarettes at a cost of $633,240. CRAIG SHEFFLER paid $685,600 in cash for these cigarettes and other cigarettes. CRAIG SHEFFLER told the undercover agents he was going to load the cigarettes on his truck and take it to his warehouse because he was not going to wait on the Canadians. The following acts were taken by the co-conspirators in carrying out this transaction:

\* \* \*

(4) On December 1, 2011, TADAIYON e-mailed BARBER revisions to invoices 1886 and 187. BARBER replied to TADAIYON that invoice 186 was Totem Pole Smoke Shop and invoice 187 was CHRIST's order;

\* \* \*

(u) On December 9, 2011, CRAIG SHEFFLER met the agents at the undercover ATF warehouse and purchased 558 cases of untaxed cigarettes for $600,000 in currency. SHEFFLER left a balance owed of $246,950. The following acts were taken by the co-conspirators in carrying out this transaction:

\* \* \*

(4) On, about and between December 13 and 17, 2011, TADAIYON, PAYAM KHEIMEHDOOZ and MOHSEN ROSTAMI delivered the untaxed cigarettes to HCID in Winnebago, Nebraska, using rental trucks. TEDDY FRENCHMAN signed the bill of lading's for invoice 191, which included 246 cases of Marlboro cigarettes and Newport cigarettes.

\* \* \*

(w) On January 19, 2012, CRAIG SHEFFLER purchased 15,480 cartons of untaxed Marlboro cigarettes and 5,760 cartons of untaxed Newport cigarettes from the ATF undercover operation in Kansas City, Missouri. CRAIG SHEFFLER paid the undercover agents $433,300 in currency for the cigarettes and agreed to pay the balance of $199,940 during the next meeting on January 23, 2012. The following acts were taken by the co-conspirators in carrying out this transaction:

5

* * *

(7) On, about and between January 19 and 20, 2012, TADAIYON, PAYAM KHEIMEHDOOZ, and ROSTAMI delivered the cigarettes in rental trucks from Kansas City, Missouri, to HCID in Winnebago, Nebraska. FRENCHMAN signed the bill of lading for the invoice which included 204 cases of Marlboro cigarettes and Newport cigarettes; and HCID purchased 51 cases of untaxed Marlboro cigarettes …

* * *

(x) On January 26, 2012, CRAIG SHEFFLER purchased 15,480 cartons of Marlboro cigarettes and 8,640 cartons of Newport cigarettes from the ATF undercover operation in Kansas City, Missouri. CRAIG SHEFFLER paid the undercover agents $740,000 in cash with a balance left of $185,400. The following acts were taken by the co-conspirators in carrying out this transaction:

* * *

(3) On January 26, 2012, TADAIYON, KHEIMEHDOOZ, and ROSTAMI picked up the contraband cigarettes at SHEFFLER's warehouse, CTW, and drove two rental trucks from Kansas City, Missouri. The trucks were stopped by the Iowa State Patrol on Interstate 29 in Iowa. These cigarettes were seized at that time by the Iowa Highway Patrol and ATF agents.

(y) None of the co-conspirators reported the sales of the unstamped cigarettes listed above to New York State, as required by law.

(z) None of the co-conspirators obtained prior approval from the New York Department of Taxation and Finance for the transportation of the above-listed cigarettes into New York State, as required by law.

(aa) None of the co-conspirators prepaid the New York State excise tax on the unstamped cigarettes listed above, as required by law.

All in violation of Title 18, United States Code, Section 371.

## CONTRABAND CIGARETTE TRAFFICKING ACT

* * *

## COUNTS THIRTEEN, FOURTEEN AND FIFTEEN

On or about the dates listed below, in the Western District Missouri and elsewhere, the defendants GHOLAMREZA TADIYON, PAYAM KHEIMEHDOOZ and MOHSEN ROSTAMI, aided and abetted by CRAIG SHEFFLER, DAVID BISHOP, T. CAMERON JONES, and TEDDY FRENCHMAN, did knowingly ship, transport, receive, possess, sell, distribute, and purchase in excess of 10,000 contraband cigarettes, as defined in Title 18, United States Code, Section 2341:

| Count | Date | Drivers | Cartons of Cigarettes | Delivered from Kansas City, Missouri to: |
|---|---|---|---|---|
| 13 | [12/9/11] | KHEIMEHDOOZ, ROSTAMI, & TADAIYON | 18,000 | Nebraska & New York |
| 14 | [1/19/12] | KHEIMEHDOOZ, ROSTAMI, & TADAIYON | 20,280 | Nebraska & New York |
| 15 | [1/26/12] | KHEIMEHDOOZ, ROSTAMI, & TADAIYON | 21,240 | Iowa |

All in violation of Title 18, United States Code, Sections 2342(a), 2344(a) and 2.

### Count 44

### Money Laundering Conspiracy

From on or about March 2011 through December 2011, in the Western District of Missouri and elsewhere, defendants CRAIG SHEFFLER, HARRY NAJIM, and others known and unknown to the grand jury, knowing that the property involved in financial transactions affecting interstate commerce represented the proceeds of some form of unlawful activity, did knowingly combine, conspire, confederate and agree together and with each other to conduct such financial transactions, which, in fact, involved proceeds of specified unlawful activity, that is, trafficking in contraband cigarettes in violation of 18 U.S.C. §§ 2341 – 2343, knowing that the transactions were designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, and the control of the proceeds of such specified unlawful activity, in violation of 18 U.S.C.

7

Case 4:13-cr-00291-BCW   Document 257   Filed 01/13/15   Page 7 of 14

§ 1956(a)(1)(B)(i), and to knowingly engage in monetary transactions in criminally derived property of a value greater than $10,000, which was derived from the specified unlawful activity stated above, in violation of 18 U.S.C. § 1957.

**MANNER AND MEANS**

As part of the manner and means by which the conspiracy was carried out, defendant CRAIG SHEFFLER, along with others, would make regular purchases in Kansas City, Missouri, of contraband cigarettes from undercover agents of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) in exchange for U.S. currency. Between April 15, 2011, and January 26, 2012, CRAIG SHEFFLER and UCC 1 paid the ATF agents approximately $9 million in cash and assets.

During the conspiracy, an ATF undercover agent was introduced to defendant HARRY NAJIM by UCC 1. NAJIM was the attorney for UCC 1 and the company Cheap Tobacco Wholesale (CTW). The undercover agent requested that NAJIM set up a "phony company" to hide some of the large cash payments received from UCC 1, CRAIG SHEFFLER and CTW. In May 2011, NAJIM established FBNA, Inc. (Fly By Night Airlines), as a Missouri corporation for the ATF undercover agent to acquire assets with the proceeds from the cigarette sales. UCC 1 did not pay the ATF undercover agents for the purchase of contraband cigarettes on May 26 and June 9, 2011. Instead, UCC 1 provided two cashier's checks to NAJIM, in the amount of $280,000 and $270,000. On June 10, 2011, NAJIM purchased an airplane for $550,000 in the name of FBNA, Inc., which was delivered from Kansas to Missouri.

In the fall of 2011, NAJIM discussed purchasing Peterbilt trucks for the ATF undercover agent with proceeds of the contraband cigarette transactions. On November 22, 2011, the ATF undercover agents sold 354 cases of contraband cigarettes to CRAIG SHEFFLER (CTW). No cash was paid to ATF in this transaction. Instead, Sheffler gave the money for this exchange to NAJIM in order to purchase four Peterbilt semi-trucks. On November 23, 2011, NAJIM purchased four Peterbilt semi-trucks in Wichita, Kansas, for $556,881, titled in the name of FBNA. The trucks were later delivered to the ATF undercover agent. Thereafter, CRAIG SHEFFLER delivered $60,000 in cash to NAJIM as payment for his services in this transaction.

All in violation of Title 18, United States Code, Section 1956(h).

(Doc #62)

II. DISCUSSION

Defendant Najim contends that he should be severed from his co-defendants for the

following reasons:

> In this case, multiple defendants are all charged with conduct dissimilar to that alleged against defendant Najim. The allegations against the other defendants are so beyond any evidence relevant to this defendant as to create undue prejudice. The only count common to Najim and the other defendants is Count One charging conspiracy and Count Forty Four charging a separate conspiracy of money laundering with one other defendant. The attempted connection or linking between the defendants in these charges is not sufficient to permit the government to justify joinder. …
>
> Trial of this case with other defendants will be unduly prejudicial to this defendant and may be intended solely by the Government to imply guilt to the defendant merely by association of similar charges among multiple defendants in the same indictment. Moreover, trial of all defendants together unnecessarily burdens this defendant with respect to the time required for trial as well as his ability to utilize witnesses who might otherwise testify on his behalf. Accordingly, in the interests of justice and fairness to this defendant, it is requested that his trial be severed from that trial of any other defendant.

(Doc #199 at 3)

Defendant Christ contends that he should be severed from his co-defendants for the following reasons:

> The evidence that will be used against the 17 other defendants to prove the 43 counts in the indictment that Mr. Christ is not charged with will be highly prejudicial to Mr. Christ. Mr. Christ will not be judged by the acts he allegedly committed, but by the actions of the other co-conspirators. … It is inappropriate to join Mr. Christ in the action simply by alleging a conspiracy.[5] …
>
> Limited information accompanied by voluminous discovery prejudices Mr. Christ by forcing him to parse through "mountains of evidence" evidence irrelevant to his defense at the same time it requires him to discern from a vague indictment what constitutes his alleged criminal conduct. … Requiring Mr. Christ to sift through thousands of irrelevant documents provided by the government in the alleged complicated scheme, particularly where Mr. Christ's alleged involvement is limited creates an undue burden upon him. Taken in tandem with the difficulty in understanding his allegedly criminal actions from such an imprecise indictment, Mr. Christ is prejudiced and unable to prepare a proper defense without being

---

[5] Defendant Christ cites the case of United States v. Donaway, 447 F.2d 940 (9th Cir. 1971), to support this proposition. However, the Court finds the Donaway case inapplicable as the conspiracy count in that case was dismissed.

9

directed to the information being used against him. Severing Mr. Christ's case from the remaining defendants would require the government to focus its disclosure on the limited set of acts purportedly committed by Mr. Christ, whatever those may be.

Furthermore, if Mr. Christ is forced to be tried with the other defendants, the resulting trial will be lengthy and involve significant presentation of evidence for claims not involving Mr. Christ. Instead of a focused and short trial, Mr. Christ will be prejudiced by a long trial with the presentation of unrelated evidence. …

(Doc #204 at 14-16)

Defendant Rostami contends that he should be severed from his co-defendants for the following reasons:

In this case Mr. Rostami is accused of being involved in wire fraud and trafficking contraband cigarettes. One of his co-defendant's Gholamreza "Reza" Tadaiyon, made a statement to authorities while he was in Iowa, on January 26th 2010, before his arrest. He stated that he had a Federal permit to buy and sell cigarettes all over the United States. He appeared to be in charge of the operation. He stated that all funds involved in the transaction were wire transferred. Tadaiyon was the only person who spoke to the agents. Based upon Tadaiyon's statement, Rostami believes that this Court has no alternative other than to sever him from the co-defendant, Tadaiyon, pursuant to Rule 14, F.R.C.P..

… Mr. Tadaiyon has a right under the Fifth Amendment of the United States Constitution not to incriminate himself. Therefore, he does not have to testify at trial. If he does not testify, and his statement is used in the government's case, Mr. Rostami will be substantial prejudiced by Mr. Tadaiyon's statements without an opportunity to cross examine him in violation of his Sixth Amendment right to Confrontation. …

… *Bruton* issues in this case call for severance.

(Doc #208 at 2-3)

The Court will address each of the defendants' arguments.

A.  <u>Defendants Are Properly Joined</u>

Rule 8(b), Federal Rules of Criminal Procedure, establishes the requirements for joinder of defendants. Defendants are permitted to be joined where "they are alleged to have participated in

10

the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." There is a preference in the federal system for joint trials of defendants who are indicted together. See Zafiro v. United States, 506 U.S. 534, 537 (1993). This is increasingly so when it is charged that defendants have engaged in a conspiracy. See United States v. Pou, 953 F.2d 363, 368 (8th Cir.), cert. denied, 504 U.S. 926 (1992).

The question of whether joinder is proper is to be determined from the face of the indictment. See United States v. Wadena, 152 F.3d 831, 848 (8th Cir. 1998), cert. denied, 526 U.S. 1050 (1999). See also United States v. Willis, 940 F.2d 1136, 1138 (8th Cir. 1991), cert. denied, 507 U.S. 971 (1993)("the indictment on its face revealed a proper basis for joinder"); United States v. Jones, 880 F.2d 55, 62 (8th Cir. 1989)("the superseding indictment reveals on its face a proper basis for joinder").

Given the factual allegations in the indictment, it is clear that the charge in Count 1 (that between July 2010 and January 26, 2012, all defendants conspired to commit wire fraud and contraband cigarette trafficking) satisfies the requirement that defendants are alleged to have participated in the same act or in the same series of acts constituting an offense. Nothing has been presented to suggest that the conspiracy charge was not put forth in good faith. There is no misjoinder in this case.

B.  Defendants Are Not Prejudiced By the Joinder

"When defendants are properly joined, there is a strong presumption for their joint trial, as it gives the jury the best perspective on all of the evidence and therefore increases the likelihood of a correct outcome." United States v. Casteel, 663 F.3d 1013, 1018 (8th Cir. 2011)(quoting United States v. Lewis, 557 F.3d 601, 609 (8th Cir. 2009)). However, Rule 14, Federal Rules of Criminal

11

Procedure, permits severance where joinder would result in unfair prejudice to a defendant. The decision to sever lies in the trial court's discretion. See United States v. Shivers, 66 F.3d 938, 939 (8th Cir.), cert. denied, 516 U.S. 1016 (1995).

Defendants Najim and Christ claim that they will be prejudiced by inferred guilt by association with co-defendants and that the bulk of the evidence has nothing to do with them. However, the Court notes that a defendant is not entitled to severance simply because the evidence against a co-defendant is more weighty than the evidence against him or because evidence admissible against a co-defendant may make his case more difficult to defend. In United States v. Willis, 940 F.2d 1136 (8th Cir. 1991), the court found:

> There can be little doubt that the joint trial made it more difficult for Willis [a minor participant charged in only two of thirty-two counts] to defend himself. The evidence clearly revealed that Duke was a major drug dealer with a "far-flung" operation. But difficulty alone is not a reason to reject joinder. A showing of clear prejudice must be made.

Id. at 1139. See also United States v. Pecina, 956 F.2d 186, 188 (8th Cir. 1992); United States v. Davis, 882 F.2d 1334, 1340 (8th Cir. 1989), cert. denied, 494 U.S. 1027 (1990).

Prejudice may occur if the jury is unable to compartmentalize the evidence against each defendant. See Willis, 940 F.2d at 1138. However, this potential problem can normally be resolved through applicable jury instructions. See Pecina, 956 F.2d at 188 ("Disparity in the weight of the evidence as between ... parties does not entitle one to severance ... In addition, the district court gave precautionary instructions advising the jury of the proper use of evidence as related to each defendant and each charge"); United States v. McConnell, 903 F.2d 566, 571 (8th Cir. 1990), cert. denied, 498 U.S. 1106 (1991)("the roles of the individual [defendants] were sufficiently distinct that the jury, aided by the court's instructions, could compartmentalize the

12

evidence against each defendant"); United States v. Jones, 880 F.2d 55, 63 (8th Cir. 1989); United States v. Jackson, 549 F.2d 517, 526 (8th Cir.), cert. denied, 430 U.S. 985 (1977). There is no reason to question that any possible prejudice to defendants Najim and Christ resulting from evidence presented against other defendants cannot be resolved through precautionary jury instructions.

Defendant Najim also argues that a trial of all defendants together unnecessarily burdens his ability to utilize witnesses who might otherwise testify on his behalf. A defendant who claims separate trials are necessary in order to call a co-defendant as a witness must provide a "firm representation" that the co-defendant would be willing to testify on the defendant's behalf. See United States v. Crumley, 528 F.3d 1053, 1063 (8th Cir. 2008). Defendant Najim has provided no indication that any of his co-defendants would be willing to testify on his behalf. Thus, this claim of prejudice must fail.

With respect to defendant Rostami's claim that a statement made by defendant Tadaiyon will prejudice Rostami and that this Bruton issue requires a severance, the government asserts that Tadaiyon's statement does not even mention Rostami. (Government's Motion to Strike Defendant Rostami's Motion for Severance (doc #209) at 1) In any event, even if Tadaiyon's statement did incriminate Rostami, a statement made in furtherance of a conspiracy does not create a Bruton issue. In United States v. Avila Vargas, 570 F.3d 1004 (8th Cir. 2009), the court found:

> In Bruton v. United States, [391 U.S. 123 (1968),] the Supreme Court held that the admission of a non-testifying defendant's statement that incriminated a co-defendant violated the latter's confrontation clause rights. 391 U.S. at 135-36. Bruton, however, does not preclude the admission of statements by a coconspirator in furtherance of the conspiracy. United States v. Spotted Elk, 548 F.3d 641, 662 (8th Cir. 2008); United States v. Singh, 494 F.3d 653, 658-59 (8th Cir. 2007); see also United States v. Coco, 926 F.2d 759, 761 (8th Cir. 1991). Such statements are generally admissible absent confrontation because they are not testimonial.

13

Spotted Elk, 548 F.3d at 662; Singh, 494 F.3d at 658-59; see also Crawford v. Washington, 541 U.S. 36, 56 (2004)("Most of the hearsay exceptions covered statements that by their nature were not testimonial-for example, business records or statements in furtherance of a conspiracy.") Under Crawford v. Washington, the confrontation clause has no application to out-of-court non-testimonial statements. Whorton v. Bockting, 549 U.S. 406, 420 (2007); Spotted Elk, 548 F.3d at 662; see also Melendez-Diaz v. Mass., --- U.S. ----, 129 S.Ct. 2527, 2539 (2009)("Business and public records are generally admissible absent confrontation not because they qualify under an exception to the hearsay rules, but because ... they are not testimonial.") Garcia's statement identifying Vargas as his source was not testimonial and thus did not implicate Vargas's Sixth Amendment confrontation clause right. We find no Bruton error.

570 F.3d at 1008-09. Thus, any statement made by defendant Tadaiyon in furtherance of the conspiracy was not testimonial and, thus, does not implicate defendant Rostami's Sixth Amendment right to confrontation.

There is no prejudice in this case that would require severance in order to ensure a fair trial.

### III. CONCLUSION

For the foregoing reasons, it is

ORDERED that defendant Najim's Motion to Sever (doc #199) is denied. It is further

ORDERED that defendant Christ's Motion for Severance is denied. It is further

ORDERED that Defendant Mohsen Rostami's Motion for Severance of Defendants (doc #208) is denied. It is further

ORDERED that the Government's Motion to Strike Defendant Rostami's Motion for Severance (doc #209) is denied.

*/s/ Sarah W. Hays*
SARAH W. HAYS
UNITED STATES MAGISTRATE JUDGE